WHATLEY, Judge,
Dissenting.
The trial court was correct in granting summary judgment for Dairyland. Courts should be cautious not to manufacture coverage that otherwise does not exist under the guise of bad faith. As noted in Shin Crest PTE, Ltd. v. AIU Insurance Co., 605 F.Supp.2d 1234, 1243 (M.D.Fla.2009), Justice Wells, in a well-reasoned dissenting opinion, discussed the dilemma that occurs in bad faith litigation:
I do not believe that it is acceptable for the Court to merely say that bad faith is a jury question. It is the Court’s responsibility to have logical, objective standards for bad faith and not to avoid setting definitive standards by declaring bad faith to be a jury question. The Court should recognize that it has the responsibility to reserve bad faith damages, which is limitless, court-created insurance, to egregious circumstances of delay and bad faith acts. The Court likewise has a responsibility to not allow contrived bad faith claims that are the product of sophisticated legal strategies and not the product of actual bad faith.
(quoting Berges v. Infinity Ins. Co., 896 So.2d 665, 686 (Fla.2004) (Wells, J., dissenting)).
The actions of Dairyland were not remotely egregious in this case. Further, Dairyland acted with reasonable diligence and care in the claims process. An outline of the following events is enlightening.
The day after the accident, Dairyland tried without success to contact the injured party, Yochim. On that same day, Dairy-land contacted its insured, Gutierrez, and advised her of her $10,000 coverage limits. At this point, Dairyland concluded Gutierrez was at fault in causing the accident. On August 20, Dairyland obtained the police report. The report confirmed Yochim was ejected from his motorcycle and suf *1227 fered an “incapacitating” injury. Being knocked unconscious could be such an injury. This is precisely why it is essential for an insurer to receive and review medical records.
On August 26, 2003, Dairyland determined Yochim’s motorcycle was a total loss and authorized payment of $10,000 in property damage policy limits. On August 29, Dairyland contacted attorney Verdi, who was initially retained to represent Yo-chim. Dairyland was advised that Yochim had new counsel. Of note, the previous day Verdi had sent Dairyland a letter advising that he no longer represented Yo-chim and giving notice of his attorney’s lien. He requested his name be on any settlement draft. On this same day Dairy-land called Alpizar’s office, only to be advised they had no record of Yochim as a client. On October 9, Dairyland again called attorney Alpizar’s office, who was now representing Yochim. Dairyland’s adjuster spoke with Alpizar’s paralegal. The paralegal told the adjuster he was not really allowed to tell him anything. He did state that Yochim “might” have a serious spinal injury or even paralysis, but he was not really sure. He asked the adjustor not to tell attorney Alpizar of any information he had relayed. The adjuster left his name and telephone number and asked that Alpizar call him. Alpizar did not return the call. Alpizar’s office had Yochim’s medical records at this time.
On October 10, Dairyland followed up with a letter to Alpizar. It stated Dairy-land’s desire to settle the bodily injury claim as soon as possible and requested the medical records. Alpizar was also alerted as to Verdi’s attorney lien. Alpizar failed to send the medical records to Dairyland. Rather, on December 22, Alpi-zar mailed medical authorization forms to Dairyland, which were received December 26. At no time did Alpizar ever make a demand for payment of the Yochim claim.
Alpizar mailed a letter to Dairyland dated September 9. The record indicates the letter was mailed October 27. Dairyland’s date stamp on the letter is October 29. What is referenced in the letter is a statutory demand for coverage/policy information to be provided within thirty days. What is absent from the letter is any reference to Yochim’s injuries.
Dairyland received the medical records on January 30, 2004. Within one day, Dairyland made an oral offer of its policy limits. On February 4, Dairyland wrote Alpizar a letter confirming the receipt of the medical records and reiterating the offer of settlement for the $10,000 bodily injury policy limits. Dairyland stated, “please indicate if your client will settle his claim for our insured’s policy limit.” An answer in the affirmative was not forthcoming.
Courts must ensure that valid claims of an insured are timely paid. Egregious conduct of an insurer in denying or delaying payment of a valid claim should result in bad faith. However, tactics designed to manufacture coverage, when none exists, should never be accepted.
I would affirm the trial court.